213 P.3d 353

**In re the Marriage of Daniela REID, Petitioner/Appellee,**

v.

**Randall REID, Respondent/Appellant.**

**No. 1 CA–CV 07–0800.**

Court of Appeals of Arizona, Division 1, Department C.

July 28, 2009.

John Friedeman, P.C. By John Friedeman, Phoenix, Attorney for Petitioner/Appellee.

Warner Angle Hallam Jackson & Formanek P.L.C. By Erik C. Bergstrom, Phoenix, Attorneys for Respondent/Appellant.

## OPINION

WINTHROP, Presiding Judge.

¶1 Randall Reid ("Father") appeals the family court's order denying his post-decree petition to modify custody of the parties' two minor children. He challenges the court's ruling allowing the admission of expert testimony, the court's failure to adequately set forth its findings and conclusions, and the sufficiency of the evidence supporting the court's decision. We affirm the evidentiary ruling, but, because the court failed to make statutorily mandated findings pursuant to Arizona Revised Statutes ("A.R.S.") section 25–403(B) (2007), we vacate the custody order and remand for further findings on the record.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Father and Daniela Reid ("Mother"), both physicians, were divorced in 2003. Mother lived in Illinois at that time and was awarded sole legal and primary physical custody of the parties' children. Father was living in New Mexico and was awarded parenting time with the children. Mother and the children later moved to Arizona.

¶3 In February 2007, Father filed a petition, seeking in part to modify the decree to obtain sole legal custody of the children. He made numerous allegations regarding Mother, including that she had repeatedly interfered with his parenting time, failed to address the children's counseling needs, neglected the children's dental care, and inappropriately prescribed medication to the oldest child.

¶4 The family court ordered a custody evaluation, and, as part of the evaluation, a

neuropsychiatric examination was conducted of the oldest child, who has since been diagnosed with Asperger's Syndrome. After the parties received the custody evaluation, Mother disclosed that she would be calling Philip Stahl, Ph.D., to critique the evaluation. Father objected to the untimely and incomplete disclosure of Dr. Stahl, but the court overruled the objection and allowed Dr. Stahl to testify via telephone at the evidentiary hearing.

¶ 5 After a one-day evidentiary hearing, the court ruled that Mother would retain sole legal and primary physical custody of the children. The court did enter various other orders to address Father's concerns, including ordering that Father's parenting time be increased, Mother immediately enter the older child in therapy, and Mother not medicate the older child without another doctor's approval. Father timely appealed, and we have jurisdiction over his appeal pursuant to A.R.S. § 12–2101(C) (2003).

## ANALYSIS

¶ 6 Father argues that the family court abused its discretion in allowing Dr. Stahl to testify, the court failed to adequately set forth its findings and conclusions pursuant to A.R.S. § 25–403(B),[1] and the evidence does not support the court's decision. We review the court's child custody decision for an abuse of discretion. *See In re Marriage of Diezsi,* 201 Ariz. 524, 526, ¶ 3, 38 P.3d 1189, 1191 (App.2002).

### I. Dr. Stahl's Testimony

¶ 7 Father asserts that the family court abused its discretion in allowing Dr. Stahl to testify because Mother did not timely disclose this witness. On August 21, 2007, eight days after the parties received the custody evaluation, and eight days before the evidentiary hearing, Mother disclosed she

would be calling Dr. Stahl to testify about the evaluation. In the subsequently filed joint pretrial statement and at the hearing, Father objected to Dr. Stahl's late disclosure and the failure to disclose the substance of his testimony. Mother conceded she had not disclosed Dr. Stahl until after she received the custody evaluation and that she had not disclosed the substance of his opinions, but argued she had notified Father's attorney that Dr. Stahl was available for deposition on two different dates before the hearing. The trial court allowed Dr. Stahl to testify, concluding the additional evidence would allow the court to make a more informed decision.

¶ 8 " 'The trial court has broad discretion in ruling on discovery and disclosure matters,' and we will not disturb its ruling absent an abuse of discretion." *Link v. Pima County,* 193 Ariz. 336, 338, ¶ 3, 972 P.2d 669, 671 (App.1998) (quoting *Rosner v. Denim & Diamonds, Inc.,* 188 Ariz. 431, 434, 937 P.2d 353, 356 (App.1996)).

¶ 9 Mother argues that *Hays v. Gama,* 205 Ariz. 99, 67 P.3d 695 (2003), supports the family court's decision, and we agree. *Hays* was a custody dispute in which a mother disobeyed a court order directing which therapist her daughter would see. *Id.* at 100, ¶¶ 5–6, 67 P.3d at 696. As a sanction, the family court excluded the child's unauthorized therapist from testifying and ordered that the therapist's clinical records not be used or relied on to form the basis for any other expert's opinion. *Id.* at 101, ¶¶ 9–10, 67 P.3d at 697. Our supreme court held that the family court had erred by imposing contempt sanctions that excluded direct and indirect evidence derived from the child's therapist. *Id.* at 104, ¶ 23, 67 P.3d at 700. Such a sanction, the court reasoned, is inconsistent with the trial court's duty to hear all competent evidence offered in determining a child's best interests when making a custody deci-

---

1. Father also argues that the family court failed to set forth its findings and conclusions regarding the factors enumerated in A.R.S. § 25–408(I) (2007). Subsection (I) lists relevant factors that the court must consider in determining a child's best interests in a relocation case—that is, in a case in which both parents reside in Arizona and the custodial parent wishes to relocate out of state while retaining custody of the child. Fa-

ther does not explain how A.R.S. § 25–408 may be applied to this case, and he himself appears to question whether this case may be viewed as a "relocation" case. Given the statute's language, we conclude that § 25–408(I) does not apply to a case such as this—when the children would "relocate" simply by virtue of a change in custody. Consequently, we do not further consider Father's argument regarding § 25–408(I).

sion. *Id.* at 103, ¶¶ 21–22, 67 P.3d at 699 (citing *Johnson v. Johnson*, 64 Ariz. 368, 370, 172 P.2d 848, 849 (1946); *In re P.M.B.*, 2 S.W.3d 618, 625 (Tex.App.1999)).

¶ 10 The testimony of Dr. Stahl in this case was much less compelling than the evidence excluded in *Hays*. Nonetheless, Dr. Stahl's testimony had some relevance. We cannot ascertain the weight the court placed on Dr. Stahl's testimony due to the court's limited findings. Therefore, we cannot gauge the degree, if any, to which Father was disadvantaged by this testimony. We note, however, that Father chose not to seek a continuance to depose Dr. Stahl. Moreover, the timing of the disclosure was not entirely Mother's fault, but was due, in part, to the late date on which the parties received the custody evaluation. Under these circumstances, we cannot say the family court abused its discretion in allowing Dr. Stahl to testify.

## II. Adequacy of Findings of Fact

¶ 11 Father next argues the family court's findings are inadequate to satisfy the requirements of A.R.S. § 25–403(B). In making a custody determination, the court must consider the factors enumerated in A.R.S. § 25–403(A) regarding the children's best interests. Further, A.R.S. § 25–403(B) requires that, "[i]n a contested custody case, the court shall make specific findings on the record about all relevant factors *and* the reasons for which the decision is in the best interests of the child[ren]." (Emphasis added.)

¶ 12 In *Diezsi*, this court held that it was an abuse of discretion for the lower court to fail to make the requisite findings pursuant to § 25–403. 201 Ariz. at 526, ¶ 5, 38 P.3d at 1191. *See also Owen v. Blackhawk*, 206 Ariz. 418, 421–22, ¶ 12, 79 P.3d 667, 670–71 (App. 2003) (holding that the family court abused its discretion in changing the primary residential parent and altering the parenting time schedule without making the required findings on the record in a contested custody case brought under the relocation statute, A.R.S. § 25–408); *Downs v. Scheffler*, 206 Ariz. 496, 501, ¶ 19, 80 P.3d 775, 780 (App. 2003) (holding that the lower court's findings were insufficient as a matter of law and

remanding for the court to make the findings required under A.R.S. § 25–403).

¶ 13 As in the aforementioned cases, the findings in this case are inadequate. The family court stated that it was in the children's best interests that Mother retain sole legal custody and primary residential custody. However, as even Mother acknowledges, the court provided no explanation why this arrangement was in the children's best interests. Additionally, although the court's order states that the court considered all of the relevant factors listed in § 25–403(A), the order's language indicates that the court may have considered other evidence as well because the court's findings included, but were "not limited to," those listed factors. Further, Mother concedes that the court "did not state which factors had influenced [its] decision," and we cannot ascertain from the court's orders and ruling how the court weighed the statutory factors to arrive at its conclusion that Mother should retain sole legal and primary physical custody. The court-ordered custody evaluation had ultimately recommended that Father become the primary residential parent, and substantial evidence was presented at the hearing regarding Mother's and Father's mental health, and the mental health of the oldest child. Nonetheless, the court's cursory findings do not indicate how it weighed this and other relevant evidence to reach the conclusion that Mother should retain custody. *Compare Owen*, 206 Ariz. at 420–21, ¶¶ 8–12, 79 P.3d at 669–70 (noting that the trial court is required to consider the factors set forth in A.R.S. § 25–408 when determining whether relocation is in the child's best interests). "Without further explanation from the trial court regarding its consideration of the applicable factors, we cannot say that the trial court did not focus too much attention on [one factor] to the exclusion of other relevant considerations." *Id.* at 421, ¶ 12, 79 P.3d at 670.

¶ 14 Citing *Banales v. Smith*, 200 Ariz. 419, 26 P.3d 1190 (App.2001) (review denied Jan. 8, 2002), Mother contends that Father waived this issue on appeal by failing to raise it in the superior court proceedings. In *Banales*, the lower court awarded sole legal and

physical custody to the mother after considering and making numerous detailed findings on all but one of the various § 25–403(A) factors. *Id.* at 419–20, ¶¶ 3–5, 26 P.3d at 1190–91. On appeal, the father argued that this omission constituted an abuse of the court's discretion. *Id.* at ¶¶ 3–4.

¶ 15 This court noted that the father had failed to raise this omission in his motion for new trial or in any other objection or motion filed before the trial court, and, relying on *Trantor v. Fredrikson*, 179 Ariz. 299, 300–01, 878 P.2d 657, 658–59 (1994), we held that the father had waived the issue on appeal.[2] *Banales*, 200 Ariz. at 420, ¶¶ 5–8, 26 P.3d at 1191. We further reasoned that the record indicated the parties had raised the omitted factor before the trial court, which demonstrated that it knew the factor was relevant, and the court's numerous other detailed findings in its minute entry showed "the court made every attempt to comply with § 25–403 in considering the best interests of [the child]." *Id.* at ¶ 7. We therefore opined that the trial court's failure to make an express finding regarding that single factor could have been a simple oversight that could easily have been corrected if the father had raised the issue below. *Id.* at ¶ 8. We also observed that "[t]he possibility that the court did not consider this factor or that an express finding on the factor would have changed the result here seems remote." *Id.* at ¶ 7.

¶ 16 We find the facts in this case distinguishable from those in *Banales*. In this case, the family court's failure to make detailed findings as to the reasons for its decision was more than the mere oversight of a single factor. Had the court substantially complied with A.R.S. § 25–403(A) by considering and making findings on all but one of the requisite factors, as it did in *Banales*, we would be in a much better position to determine whether the court properly weighed and considered the necessary factors in determining the best interests of the children. Further, although we have no quarrel with

the general proposition that, when a party fails to raise an issue before the trial court, the issue is waived on appeal, *see, e.g., Trantor*, 179 Ariz. at 300–01, 878 P.2d at 658–59, we observe that neither *Trantor* nor its progeny has created an unalterable rule of waiver. *See id.* at 300, 878 P.2d at 658 (qualifying that, "*absent extraordinary circumstances,* errors not raised in the trial court cannot be raised on appeal" (emphasis added)); *In re MH 2006–000023*, 214 Ariz. 246, 249, ¶ 11, 150 P.3d 1267, 1270 (App.2007) (concluding that, given the liberty interests at stake, an involuntary treatment case presents one of the extraordinary circumstances in which an error not presented to the trial court may be presented in the first instance to the appellate court). *See also City of Tempe v. Fleming*, 168 Ariz. 454, 456, 815 P.2d 1, 3 (App. 1991) (recognizing that the waiver rule "is procedural, not jurisdictional, and we may suspend it in our discretion" (citations omitted)).

¶ 17 In *State v. Richey*, 160 Ariz. 564, 565, 774 P.2d 1354, 1355 (1989), our supreme court held that, although not required statutorily, specific findings of fact and conclusions of law must be made by a trial court in awarding attorneys' fees under A.R.S. §§ 12–341.01(C) and 12–349, which provide for an award of attorneys' fees as sanctions. In *Trantor*, our supreme court addressed whether a party's failure to object in the trial court to the absence of the findings required by *Richey* prevented a party from raising the issue on appeal. 179 Ariz. at 299, 878 P.2d at 657. The supreme court determined that the findings of fact and conclusions of law made obligatory under *Richey* were not so fundamentally required as to preclude waiver, and ultimately "conclude[d] that the failure of a party to object to the lack of findings of fact and conclusions of law in making awards of attorneys' fees under § 12–341.01(C) or § 12–349 precludes that party from raising the absence of findings as error on appeal." *Id.* at 301, 878 P.2d at 659. The court rea-

---

**2.** This court also cited *In re Marriage of Pownall*, 197 Ariz. 577, 583, ¶ 27, 5 P.3d 911, 917 (App. 2000) (citing *Trantor*), and *Callanan v. Sun Lakes Homeowners' Ass'n No. 1, Inc.*, 134 Ariz. 332, 337, 656 P.2d 621, 626 (App.1982), for the proposition that a failure to object to a trial court's lack of findings constitutes a waiver of that argument on appeal. *See Banales*, 200 Ariz. at 420, ¶ 6, 26 P.3d at 1191.

soned that the trial court and opposing counsel should be afforded the opportunity to correct asserted defects before they are raised on appeal and rejected the rationale of promoting appellate review as a basis for declining to find a waiver. *Id.* at 300–01, 878 P.2d at 658–59. In rejecting that rationale, our supreme court noted that, "[a]lthough findings of fact and conclusions of law are certainly helpful on appellate review, they do not go to the foundation of the case or deprive a party of a fair hearing." *Id.*

■ ¶ 18 In *Banales,* this court applied without analysis the presumptive rule of waiver espoused in *Trantor* to § 25–403. *See Banales,* 200 Ariz. at 420, ¶ 6, 26 P.3d at 1191 ("Although none of these cases [including *Trantor*] involves the findings required by § 25–403, we believe their reasoning and holdings are equally applicable in this context."). As this court recognized in *Banales,* § 25–403 explicitly requires that a trial court make specific findings. *See id.* (citing A.R.S. § 25–403(B) (stating that "the court shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child")). The rationale for this requirement is not simply to aid appellate review—a rationale rejected as insufficient by our supreme court in *Trantor*—but also to provide the family court with a necessary "baseline" against which to measure any future petitions by either party based on "changed circumstances." *See Canty v. Canty,* 178 Ariz. 443, 448, 874 P.2d 1000, 1005 (App.1994) ("To change a previous custody order, the court must determine whether there has been a material change in circumstances affecting the welfare of the child." (citing *Pridgeon v. Superior Court,* 134 Ariz. 177, 179, 655 P.2d 1, 3 (1982))); *see also Anderson v. Anderson,* 14 Ariz.App. 195, 198, 481 P.2d 881, 884 (1971) ("It is axiomatic Arizona law that the trial court in divorce cases retains continuing jurisdiction to modify or amend the custody provisions relating to minor children. Also well established is the proposition that a prerequisite to modification is a showing of changed circumstances affecting the welfare of the children."). In other words, § 25–403(B)'s statutory requirement that the family court make specific findings on the record

about all relevant factors and the court's reasoning exists not only to aid an appellant and the reviewing court, but also for a more compelling reason—that of aiding all parties and the family court in determining the best interests of the child or children both currently and in the future. *See generally Downs,* 206 Ariz. at 499, ¶ 7, 80 P.3d at 778 ("Arizona's public policy makes the best interests of the child the primary consideration in awarding child custody." (citing *Hays,* 205 Ariz. at 102, ¶ 18, 67 P.3d at 698)). *See also Clifford v. Woodford,* 83 Ariz. 257, 262, 320 P.2d 452, 455 (1957) (stating that the child's best interest is the "primary consideration" and the "pole star" for the court); *In re Marriage of Gove,* 117 Ariz. 324, 328, 572 P.2d 458, 462 (App.1977) ("In a custody case the primary duty of the court is to safeguard the best interests and welfare of the children." (citing *Clifford*)); *Hoffman v. Hoffman,* 4 Ariz.App. 83, 85, 417 P.2d 717, 719 (1966) (refusing to apply the court rule treating as a confession of error a mother's failure to file an answering brief in a child custody appeal, because doing so would not serve the ends of justice and would have an adverse effect on the children, who were unrepresented but were the persons most interested in the proceedings).

¶ 19 Although we agree that Father should have raised this issue before the lower court, and doing so would have provided that court with a simpler, more expedient opportunity to remedy its lack of findings and perhaps reconsider its decision, we also conclude that mechanically applying waiver principles in this setting and in similarly postured cases involving the mandatory statutory findings of A.R.S. § 25–403 would inappropriately deprive the family court and all parties of the baseline information required for future petitions involving a child's or children's best interests.

■ ¶ 20. Because the most important issue in custody disputes is the best interests of the child or children, and neither *Trantor* nor its progeny has created an unalterable rule mandating waiver in all instances, we decline to apply the waiver rule enunciated in *Trantor* and adopted in *Banales* in the in-

flexible manner advocated by Mòther. The lack of findings in this case was error as a matter of law, *see Diezsi,* 201 Ariz. at 526, ¶ 5, 38 P.3d at 1191, which deprived this court of a meaningful opportunity to assess the family court's best interests finding, and Father did not waive this issue in this limited circumstance by failing to raise it below. We therefore vacate the family court's order and remand the matter for that court's reconsideration and for the court to make findings supporting its decision as required by A.R.S. § 25-403(B).[3] Because we are remanding for reconsideration and to allow the court to make appropriate findings, we need not and do not reach the issue whether the decision was supported by the evidence.[4]

### III. Mother's Request for Sanctions

¶ 21 In her answering brief, Mother argues that Father's opening brief fails to include a statement of facts pursuant to Rule 13(a)(4) of the Arizona Rules of Civil Appellate Procedure, and she asks this court to sanction Father by awarding her all or part of the fees her attorney incurred in preparing a statement of facts.

¶ 22 Rule 13(a)(4) states that the appellant's brief shall set forth "[a] statement of facts relevant to the issues presented for review, with appropriate references to the record." The rule further provides that "[t]he statement of facts may be combined with the statement of the case." ARCAP 13(a)(4). Additionally, we note that Rule 13(a)(6) provides for an argument section in the opening brief that contains "parts of the record relied on" and "may include a summary."

¶ 23 In this case, Father provided a statement of the case containing citations to the record, and the statement of facts section of his opening brief clearly states that the relevant facts are set forth in the applicable sections discussing the issues. Indeed, Father cites portions of the record for each fact he discusses later in his brief. Further, Mother concedes that Father's brief contains relevant facts with record citations in the argument section of his brief.

¶ 24 Even assuming that Father's opening brief does not precisely adhere to the tenets of Rule 13(a)(4), the order in which the factual citations appear in his brief should not have resulted in any additional effort by Mother's attorney. Consequently, we deny Mother's request for sanctions on this basis.

### IV. Attorneys' Fees on Appeal

¶ 25 Both parties request an award of attorneys' fees on appeal based on A.R.S. § 25-324 (Supp.2008). Neither of the parties has taken an unreasonable position on appeal, and both parties appear to have equally adequate financial resources to pay their respective attorneys' fees. Accordingly, each party shall bear his or her own attorneys' fees on appeal.

### CONCLUSION

¶ 26 We affirm the family court's decision to allow Dr. Stahl to testify at the custody hearing. However, we vacate the court's custody order and remand the issue of child custody to the court for reconsideration with instructions to make specific findings on the record pursuant to A.R.S. § 25-403(B). In remanding this case, we express no opinion as to the merits. We also deny Mother's request for sanctions. Each party shall pay his or her own attorneys' fees.

CONCURRING: PÀTRICK IRVINE, Judge.

HALL, Judge, dissenting.

¶ 27 The majority's determination that the waiver rule as explicated in *Trantor* does not

---

3. As the dissent notes, these parties are both well-funded, and the record is clear that they do not shy away from litigation. Thus, we find it unlikely that any decision of this court will provide an ultimate resolution to their litigation and result in the finality that both the dissent and the majority agree is desirable.

4. The dissent contends that our decision will encourage a litigant who loses or is likely to lose in the lower court to intentionally avoid requesting findings in order to secure an "inevitable reversal" on appeal. This argument overlooks the fact that both sides have the ability to request the necessary findings from that court.

apply to custody modification hearings has the unfortunate effect of delaying certainty and stability where it is most needed and prolonging litigation where it is least desirable. I agree that the family court did not adequately comply with the statutory requirement that it "make specific findings on the record about all relevant factors."[5] A.R.S. § 25–403(B). But as the supreme court explained in *Trantor*, a trial court should be afforded an opportunity to correct such an error before it may be raised on appeal:

> Although findings of fact and conclusions of law are certainly helpful on appellate review, they do not go to the foundation of the case or deprive a party of a fair hearing. If the court has failed to make findings and a party wants them, all one has to do is to make that issue known in the trial court. The trial court will either make findings or it will not. If it does, the party gets what it wants. If it fails to do so, the issue is preserved for review. But by failing to act at all, a litigant is not in the position to complain about how helpful findings would have been on appeal.

179 Ariz. at 300–01, 878 P.2d at 658–59.

¶ 28 The majority reasons that *Trantor* is distinguishable because the failure of a family court to make specific findings of fact in a child custody case is the type of "extraordinary circumstance" that excuses a party from providing the court an opportunity to correct the defect before any error may be raised on appeal. Although I agree with the majority's observation that there are "compelling" reasons for a family court to make the specific findings required by § 25–403(B), including the overriding concern with the best interests of the child, I disagree that the importance of adequate findings in child custody cases is a reason for us to deviate from the sound jurisprudential principle that errors not raised in the trial court cannot be raised

on appeal. Rather, I believe that the importance of such findings is all the more reason why a litigant should be required to first provide the family court an opportunity to correct what is a significant but easily correctable procedural omission before asserting on appeal that the omission constitutes reversible error.

¶ 29 The majority's determination that such errors need not be raised in the family court means that, typically, they will not be. Every litigant (at least if represented by an attorney in the family court, as were these parties) who is dissatisfied with the outcome of a child custody battle knows that there is very little likelihood that a family court will change its decision when reminded of its obligation to make specific findings, and few will pursue that route if not required to do so before seeking appellate review. Instead, this opinion permits a litigant who loses in the trial court to simply appeal and try to secure a more favorable outcome before a different judge when the child custody determination is inevitably vacated and the case remanded. At a time when the Arizona Supreme Court has recently limited the use of this type of litigation tactic in criminal cases, *see State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005) (holding that a defendant who fails to object to trial error forfeits his right to appellate review unless he can establish fundamental error), we should not expand its use in civil cases.

¶ 30 Moreover, to the extent that my colleagues imply that *Trantor* is less applicable to statutes that specifically require findings, I disagree. First, one of the attorneys' fees statutes at issue in *Trantor* was A.R.S. § 12–349 (2003), under which a court may not award fees for unjustified actions without "set[ting] forth the specific reasons for the award," A.R.S. § 12–350 (2003). Second, *Trantor* cited approvingly to *Bayless Invest-*

---

5. To be fair to the family court, it did list the factors under A.R.S. § 25–403(A) that it considered and did so in a manner that showed it evaluated at least some of those factors in light of the evidence. For example, the family court specifically mentioned that it considered the medical condition of one of the parties' children in evaluating the statutory factors listed in subsections (A)(4) ("the child's adjustment to home, school and community") and (A)(5) ("The mental and physical health of all individuals involved"). Furthermore, the court also made some specific findings, including that Mother has always been the primary caretaker of the children, that Father failed to maintain current child support payments, and that Father's claim that the children's dental health was imperiled by Mother's neglect was not substantiated by the evidence.

*ment & Trading Co. v. Bekins Moving & Storage Co.*, 26 Ariz.App. 265, 270–71, 547 P.2d 1065, 1070–71 (1976), which held that a party is precluded from raising for the first time on appeal the trial court's failure to make findings when specifically required to do so by Arizona Rule of Civil Procedure 52(a). 179 Ariz. at 301, 878 P.2d at 657. Accordingly, I perceive that *Trantor's* waiver rule applies with as much vigor to statutes or rules that specifically require findings as it does when the requirement is imposed by case law. *Cf. Galloway v. Vanderpool*, 205 Ariz. 252, 256, ¶ 17, 69 P.3d 23, 27 (2003) ("Once published, our interpretation [of a statute] becomes part of the statute."); *Local 266, Int'l Bhd. of Elec. Workers, A.F. of L. v. Salt River Project Agric. Improvement and Power Dist.*, 78 Ariz. 30, 43, 275 P.2d 393, 402 (1954) (recognizing that "unreversed statutory construction is to be held part of the statute as if originally so written").

¶ 31 One further point. Because my colleagues choose not to apply *Trantor's* waiver rule, they do not reach the underlying substantive issue raised by Father: Whether the family court's denial of Father's petition for a change in custody was supported by the evidence. As a consequence, this issue will remain unresolved pending a probable further appeal by these well-funded litigants. I would reach this issue and find that the trial court's custody order was sufficiently supported by the evidence, thus bringing this particular chapter in the parties' litigation history to a conclusion.

¶ 32 Based on the foregoing, I respectfully dissent.